UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

| | |
|---|---|
| JUSTIN LYNN VICTORY,<br><br>           Plaintiff(s),<br><br>v.<br><br>NEVADA STATE TREASURER,<br><br>           Defendant(s). | Case No. 2:24-cv-01937-CDS-NJK<br><br>**ORDER**<br><br>[Docket No. 9] |

Plaintiff is required by statute to pay an initial partial filing fee of $12.33. *See* Docket No. 3; *see also* 28 U.S.C. § 1915(b)(1). The undersigned issued a report and recommendation that the case be dismissed for failing to pay the initial filing fee. Docket No. 7. The report and recommendation remains pending. Plaintiff has filed a motion to move forward with this case, Docket No. 9, which the Court construes as a request to modify or withdraw the report and recommendation.

**I.   BACKGROUND**

Plaintiff is a prisoner suing the Nevada State Treasurer alleging a Fourth Amendment constitutional violation regarding his failed attempt to recover from the state's website for unclaimed property funds apparently tied to a $34,000 cashier's check. *See* Docket No. 1-1.[1] On November 6, 2024, the Court ordered Plaintiff to pay an initial partial filing fee of $12.33 by

---

[1] Plaintiff is a frequent litigator, initiating at least eight cases over the span of 16 months. *See also Victory v. Henderson NA P.D.*, Case No. 2:23-cv-02086-CDS-NJK (D. Nev.); *Victory v. Bank of America*, Case No. 2:24-cv-00978-JAD-DJA (D. Nev.); *Victory v. Schoppmann*, Case No. 2:24-cv-01998-APG-MDC (D. Nev.); *Victory v. Flangas Frizzell Law Firm*, Case No. 2:24-cv-02102-GMN-BNW (D. Nev.); *Victory v. Andrews*, Case No. 2:24-cv-02397-JAD-BNW (D. Nev.); *Victory v. Conine*, Case No. 2:25-cv-00604-APG-DJA (D. Nev.); *Victory v. Conine*, Case No. 2:25-cv-00605-JAD-EJY (D. Nev.). In light of the filing fee issue discussed herein, Plaintiff's complaint in this case has not yet been screened. *See* 28 U.S.C. § 1915(e)(2). The Court notes that the cashier's check at the heart of this case appears to be the same cashier's check identified in Plaintiff's multiple cases regarding his arrest. *See, e.g.*, Case No. 2:24-cv-00978-JAD-DJA, Docket No. 1 at 3 (D. Nev. May 24, 2024); Case No. 2:24-cv-02397-JAD-BNW, Docket No. 1-1 at 3-4 (D. Nev. Dec. 23, 2024). The same cashier's check also appears to be the focus of other cases Plaintiff brought against the Nevada State Treasurer. *See, e.g.*, Case No. 2:25-cv-00605-JAD-EJY, Docket No. 1-1 at 2 (D. Nev. Apr. 3, 2025).

December 21, 2024. Docket No. 3. On December 17, 2024, the Court denied Plaintiff's motions to waive the filing fee because the record appeared to show that Plaintiff had the means to make that payment, but that he spent down his balance for phone and commissary expenses. Docket No. 6. The Court extended the payment deadline to February 18, 2025. *Id.* Plaintiff did not make that payment, which led eventually to the issuance of a report and recommendation on February 24, 2025. Docket No. 7. That report and recommendation remains pending, *see* Docket No. 8 at 2 (deferring ruling on report and recommendation), but the payment deadline has been extended to May 2, 2025, *id.* at 3.

Plaintiff's current motion provides updated financial information and asks that the case proceed based on that new information without payment of the initial partial filing fee. Docket No. 9. Plaintiff explains therein difficulties with the prison work programming. *See id.* at 1-2. Plaintiff also explains that he receives money from his family that he uses on telephone access. *See id.* at 1.[2] Plaintiff also provides an updated financial certificate, showing that he had a deposit of $19.99 into his trust account on December 2, 2024. *Id.* at 4.[3] His account balance as of that date was $20.03. *See id.* Between that date and the first deadline to make the initial partial payment (December 21, 2024), however, Plaintiff spent his funds such that sufficient money did not remain to make the $12.33 payment. *See id.*

**II.    STANDARDS**

The benefit of proceeding *in forma pauperis* in federal court is to be considered a "privilege." *Williams v. Field*, 394 F.2d 329, 332 (9th Cir. 1968). "When determining the ability of an *in forma pauperis* plaintiff to pay a partial filing fee, the court may consider the plaintiff's cash flow in the recent past, and the extent to which the plaintiff has depleted his savings on nonessentials." *Hymas v. U.S. Dept. of the Interior*, 73 F.4th 763, 768 (9th Cir. 2023) (quoting *Alexander v. Carson Adult High Sch.*, 9 F.3d 1448, 1449 (9th Cir. 1993)). "If the plaintiff has depleted a previously adequate account and cannot pay the partial fee, the court may require the

---

[2] Plaintiff also spends his money, *inter alia*, at the commissary. *See id.* at 9.

[3] This deposit was made immediately after Plaintiff earlier asked the Court to waive the filing fee. *See* Docket No. 4 at 1 (motion dated December 1, 2024).

plaintiff to justify the depletion." *Alexander*, 9 F.3d at 1449; *see also Oliveras v. Marshall*, 59 F.3d 109, 112 (9th Cir. 1995) ("The district judge was entitled to consider Olivares's own economic choices about how to spend his money, as between his filing fee and comforts purchased in the prison commissary...").

In the context of inmate litigants proceeding *in forma pauperis* after 1995, the plaintiff must pay an initial partial filing fee based on a statutory formula. 28 U.S.C. § 1915(b)(1). This initial partial filing fee must be collected "when funds exist." *Id.* "In no event shall a prisoner be prohibited from bringing a civil action or appealing a civil or criminal judgment for the reason that the prisoner has no assets and no means by which to pay the initial partial filing fee." 28 U.S.C. § 1915(b)(4). This safety valve provision separately addresses the lack of assets and the lack of means, so a lack of assets does not (standing alone) insulate a non-paying prisoner from dismissal. *Boise Cascade Corp. v. U.S. E.P.A.*, 942 F.2d 1427, 1432 (9th Cir. 1991) ("Under accepted canons of statutory interpretation, we must interpret statutes as a whole, giving effect to each word and making every effort not to interpret a provision in a manner that renders other provisions of the same statute inconsistent, meaningless or superfluous"). Hence, dismissal is improper if a prisoner had no funds to make payment when the fee order issued and the prisoner also had no means to make the payment subsequently throughout the period until the partial filing fee is due. *See Taylor v. Delatoore*, 281 F.3d 844, 850 (9th Cir. 2002) (finding the prisoner had no means to pay the initial partial filing fee because "his inmate trust account had a negative balance from the time he was first ordered to pay the initial fee up until the time his case was dismissed"). Notwithstanding the statutory safety-valve provision, courts continue to make clear that a prisoner cannot avoid the partial filing fee by choosing to spend down his account: "when a prisoner has the means to pay an initial partial filing fee and instead spends his money on amenities at the prison canteen or commissary, he should not be excused for failing to pay the initial partial filing fee." *Baker v. Suthers*, 9 Fed. Appx. 947, 949 (10th Cir. 2001); *see also, e.g.*, *Thomas v. Butts*, 745 F.3d 309, 312 (7th Cir. 2014) (collecting cases).

There are important policy implications at stake with respect to the initial partial filing fee. The Prison Litigation Reform Act of 1995 was intended to cut down the flood of lawsuits initiated

by inmates. *Lopez v. Smith*, 203 F.3d 1122, 1129 (9th Cir. 2000) (en banc). The statute requires that, *inter alia*, prisoners pay filing fees for the suits they initiate even if they receive *in forma pauperis* status; first through the payment of an initial partial payment and then through subsequent withdrawals from their prison accounts. *See Bruce v. Samuels*, 577 U.S. 82, 85-86 (2016). As stated by the Fourth Circuit:

> Requiring prisoners to make economic decisions about filing lawsuits does not deny access to the courts; it merely places the indigent prisoner in a position similar to that faced by those whose basic costs of living are not paid by the state. Those living outside of prisons cannot file a lawsuit every time they suffer a real or imagined slight. Instead, they must weigh the importance of redress before resorting to the legal system. If a prisoner determines that his funds are better spent on other items rather than filing a civil rights suit, "he has demonstrated an implied evaluation of that suit" that the courts should be entitled to honor.

*Roller v. Gunn*, 107 F.3d 227, 233 (4th Cir. 1997); *see also Oliveras*, 59 F.3d at 112 (pre-PLRA decision). The statutory framework requiring the payment of an initial partial filing fee would be rendered ineffectual "[i]f every inmate were permitted to simply spend funds in the canteen to avoid paying a filing fee." *Briand v. State of Fla.*, 2006 WL 1890189, at *1 (N.D. Fla. July 10, 2006).

### III.   ANALYSIS

The Court is not persuaded that sufficient grounds exist to modify or withdraw the pending report and recommendation. The Court determined, based on the statutorily mandated formula, that Plaintiff was required to pay $12.33 by December 21, 2024. Docket No. 3. The record before the Court revealed significant deposits into Plaintiff's inmate accounts, totaling more than $370. *See* Docket No. 1 at 5-6. For the pertinent period, the average monthly deposits were $61.67 and, even with many phone and commissary withdrawals during that same period, the average monthly balance was $19.31. *Id.* at 4. Moreover, Plaintiff had a remaining balance exceeding his required partial payment amount. *See id.* at 4, 6 (closing balance of $18.75).

In his updated financial papers submitted with the instant motion, Plaintiff continues to show that he has had the means to make the required payment, including having several deposits made into his inmate accounts. *See* Docket No. 9 at 4. As of November 7, 2024, Plaintiff was put

on notice that he was required to make an initial payment of $12.33 by December 21, 2024. Docket No. 3. Just a few weeks before that deadline, Plaintiff received a $19.99 deposit on December 2, 2024, and clearly had sufficient funds to make the initial payment of $12.33. Docket No. 9 at 4. Rather than make the initial partial payment with those funds, however, Plaintiff chose to spend down his money such that his balance dipped below $12.33 on the payment deadline. *See id.*[4] These expenditures were mostly directed to family phone calls and commissary purchases. *See* Docket No. 9 at 4. Plaintiff explains that he prioritizes calling his family members because he "may never see [them] again," which has impeded his ability to retain the funds to pay the initial filing fee in this case. *See id.* at 1. Plaintiff does not explain the commissary purchases.

In short, Plaintiff has not shown that he lacks the means to make the initial payment of $12.33. To the contrary, Plaintiff had the means to do so, but prioritized spending that money on other expenditures. There are very important policy reasons for requiring an initial payment from prisoners[5] and the Court declines to obviate that requirement based on the expenditure of funds shown in the instant record.

**IV.   CONCLUSION**

For the reasons discussed more fully above, the Court **DENIES** Plaintiff's motion to move forward with this case, Docket No. 9, which the Court construes as a request to modify or withdraw the report and recommendation.

IT IS SO ORDERED.

Dated: April 22, 2025

_____
Nancy J. Koppe
United States Magistrate Judge

---

[4] These facts distinguish this case from the circumstances in *Taylor*, where the Ninth Circuit found the prisoner had no means to make the initial filing fee "because his inmate trust account had a negative balance from the time he was first ordered to pay the initial fee up until the time his case was dismissed." 281 F.3d at 850; *see also id.* at 851 (explaining that it was "uncontested that [the plaintiff] lacked the means" to make that payment). In addition, there was no evidence in *Taylor* that the prisoner depleted his account to avoid the payment of the initial fee. *Id.* at 850 n.4.

[5] The Court is particularly disinclined to eviscerate the intended deterrent effect of the initial partial filing fee given Plaintiff's prolific litigation efforts. *See* Section I, fn.1.